1  Keren Tamali Sita
   25 Franklin Street, Unit 203
2  Essex Junction, 05452
   802-307-8930 | 802-225-0476
3  sitakerenvt@gmail.com

4               UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

5  **KEREN SITA,**                              Case No.: 2:24-cv-387

6                Plaintiff,

7  vs.                                          KEREN VS ACCES

8  **ACCESS SELF STORAGE OF WILLISTON**

9
   **ARMAND FOURNIER**
10               Defendant

11

12                        **DEMAND FOR TRIAL BY JURY**

13  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

14                          **COMPLAINT AT LAW**

15  NOW COMES Plaintiff, Keren Sita (referred to as "Miss Sita" or "Plaintiff"), I, Keren Sita, the Plaintiff in this

16  matter, appearing pro se, hereby initiate this Complaint against Vermont's Self Storage and Manager Armand

17  Fournier, hereinafter referred to as "Defendant AF." The essence of this claim revolves around my contentions

18  against the Defendants, alleging intentional violations of my Vermont constitutional rights concerning property

19  possession and protection as outlined in Article One of the Vermont Constitution, racial discrimination, invasion of

20  privacy, and breach of a business contract.

21                            **JURISDICTION**

22  1.   The jurisdiction of the federal court is predicated upon the statutory provisions outlined within 28 U.S.C.

23       §§1331 and 1343. Per 28 U.S.C. §1331, the court is vested with jurisdiction to adjudicate upon my legal issues

24       arising from federal law and the construction of the Vermont Constitution. Particularly, the present action

25       concerns a constitutional matter invoking federal queries pursuant to Article I of the Vermont Constitution,

26       pertaining to my inherent right to possessing and protecting property.

27

28
    KEREN VS ACCES - 1

1

<b><u>VENUE</u></b>

2. Pursuant to 28 U.S.C. §1391, venue properly lies in the United States District Court for the State of Vermont, as this is the district where the parties reside and where the events complained of occurred.

<b><u>PARTIES</u></b>

3. Plaintiff KEREN SITA, an individual residing in Chittenden County, State of Vermont, I asserts her status as a protected class member based on race, color, national origin, and gender. As a U.S. and Vermont citizen, Plaintiff avows her civil and unalienable constitutional rights accorded under the State and Federal Constitution.

4. The Defendants, Access Self Storage of Williston, a self-storage business entity, conduct their operations at 1544 S Brownell Rd, Williston, VT 05495.

5. Armand Fournier, acting as the Manager of Access Self Storage of Williston, carries out his employment duties at 1544 S Brownell Rd, Williston, VT 05495.

<b><u>FACTUAL BACKGROUND</u></b>

6. In the spring of 2022, I made the decision to rent a storage unit at Add Access Self Storage in Williston, VT. From the get-go, I ensured all fees were promptly settled, maintaining a flawless standing with the facility.

7. Initially, my move into the unit was without any troubles. However, a couple of months later, my return to the storage unit with my father presented an unexpected revelation - the key I had purchased was working and then I founded out the lock I got from Home Depot had been inexplicably cut and a brand-new lock was placed.

8. According to the facility's agreement, tenants were responsible for providing their locks, so I was so shocked that my lock was changed, and no one told me why or called me.

9. This detail made the incident of my lock being changed behind my back all the more questionable. When I confronted Armand Fournier about this unauthorized switch, his reasoning seemed flimsy at best.

10. As a Black woman, I couldn't help but question whether there was a racial component to his actions, considering the dubiousness of his explanations and the lack of transparency in his conduct.

11. When I asked to see the security camera footage to check if anyone had messed with my stuff, Armand Fournier refused even though I was entailed to it.

12. Because it was clear that my storage unit was targeted and sought out, and it was my lock was cut and no one told me. The person who had my key was the owners of the storage unit. What happened to me was unheard of.

13. A thorough examination of my storage unit revealed signs of unauthorized entry and disturbance to my

KEREN VS ACCES - 2

possessions.

14. Faced with this breach of trust, I decided to halt my payments and explore my legal options against the owner.

15. The racial undertones became unmistakably clear when I realized that a similar request from a white woman would likely have been granted without hesitation.

16. Frustrated by this evident bias and corruption within the operation, I terminated my payments, knowing that dealing with such a corrupt white man would eventually reveal his true colors if I remained patient and I was exploring my legal options.

17. In the midst of these unsettling events, I discovered that the storage facility was overcharging me for late fees, well beyond the legal limit stipulated by the law.

18. Even as I reiterated my intent to settle my dues after receiving a notification of the intent to sell my items due to non-payment, Armand Fournier conveniently ignored my emails.

19. His dismissive response claiming that my items held no value, leading to their disposal, felt like a deliberate attempt to undermine the importance of my possessions based on my race.

20. The evident discriminatory treatment, made stark by the preferential treatment afforded to white renters compared to my experience, raises substantial concerns regarding racial bias and mistreatment.

21. As a Black woman, this series of events highlights the deliberate negligence of my rights and the devaluation of my belongings based solely on my race, painting a clear picture of systemic discrimination at play.

22. The entire encounter with defendant AF left me baffled. Initially, when I first met him, he appeared nervous and shy, but considering my interactions with many men who exhibit similar behaviors, I didn't dwell on it much.

23. However, the situation where a storage unit could remove my lock without explanation and provide no prior notification was utterly perplexing.

24. Throughout this ordeal, I was led to believe my belongings were secure behind the lock, unaware of who had access to it or how frequently. To my shock, he later claimed to have disposed of all my possessions.

25. Subsequently, I informed him of my intention to seek legal counsel and take necessary legal actions. I am now escalating this case to the federal district of court of Vermont.

26. I am accusing defendant AF of tampering with contracts, specifically by falsifying documents and replicating my signature without authorization.

27. These actions are inexcusable and can only be addressed through legal proceedings. And Defendant AF is

KEREN VS ACCES - 3

1   clearly a liar and the only way get him to tell the truth is if he tells the truth does it under the laws penalties and

2   perjury.

3  28.  I firmly believe that the contract presented to me was fabricated, as it contained terms I would never have

4      agreed to. It is inconceivable that I, a woman of color with a solid educational background, would be naïve

5      enough to endorse such a document. He think because I am pretty, black women I wouldn't know the

6      difference.

7  29. If white people who don't even have legal education wouldn't sign that contract, I don't know what makes him

8      this I would and I wouldn't be able to tell the difference.

9  30. I am adamant about pursuing justice and holding the defendant accountable within the confines of the legal

10     system, where he is bound by the laws governing perjury and penalties to tell the truth.

11                  **CAUSE OF ACTION**
**FIRST CAUSE OF ACTION:**

12  **VIOLATION OF ARTICLE ONE OF THE VERMONT CONSTITUTION - SUBJECTION CONCERNING CONSTITUTIONAL RIGHT OF POSSESSING AND PROTECTING PROPERTY BASED UPON THE**

13                                **DOCTRINE OF RESPONDEAT SUPERIOR**

14  31. I, as the Plaintiff, hereby incorporate and reallege Paragraphs 1 through 30, as though fully set forth at length

15     herein.

16  32. I assert the following cause of action against the defendant, Armand Fournier of Access Self Storage, based on

17     the violation of my constitutional right of possessing and protecting property as guaranteed by the Vermont

18     Constitution.

19  33. Defendant, by breaking my lock without notice and failing to inform me of this action, thereby violated my

20     constitutional right of possessing and protecting my property.

21  34. Armand Fournier had a duty to promptly notify me upon cutting the lock to allow me the opportunity to

22     safeguard my belongings.

23  35. The failure to disclose this crucial information led to unauthorized and unknow to me individuals accessing my

24     storage unit and rifling through my possessions without my consent, depriving me of the ability to defend and

25     protect my property.

26  36. As a direct consequence of Defendant's actions, I suffered specific damages, including the loss of valuable

27     items, emotional distress, and a violation of my constitutional right to possess and protect my property.

28  37. Defendant's conduct exhibited clear discrimination and racial bias, evident in the disparate treatment I received

KEREN VS ACCES - 4

1    compared to white individuals who have rented from Access Self-Storage.

2    38.  Armand Fournier's disregard for my rights and the devaluation of my belongings based on my protected

3    characteristic.

4    39.  Defendant Access Self Storage Of Williston is vicariously liable for the negligent acts, commissions, or

5    omissions of its employees and/or agents including Defendant Armand Fournier's who was at all times relevant

6    hereto acting on behalf of defendant Access Self Storage Of Williston and within the scope of his employment

7    with defendant Access Self Storage Of Williston, under the doctrines of respondeat superior and ostensible

8    agency.

9    40.  At all relevant times, Defendant Access Self Storage Of Williston had a duty to act in accordance with the legal

10   standards Vermont Constitution and to act as a reasonable self-storage corporation would under the same or

11   similar circumstances

12   41.  Defendant Access Self Storage Of Williston and definitely Armand Fournier's conduct were malicious, wanton,

13   willful, oppressive, and/or exhibited a reckless indifference to my property rights and safety of my belongs and

14   the stress of having no knowledge that my items were touched such that an award of punitive damages is

15   warranted.

16   42.  As a direct result of Defendant's conduct, Plaintiff suffered specific damages, including the loss of valuable

17   items, emotional distress, and a violation of their constitutional right to possess and protect their property.

18   43.  Defendant's actions were discriminatory and racially motivated, as evidenced by the disparate treatment of

19   Plaintiff compared to white individuals in similar situations.

20   44.  Armand Fournier's disregard for Plaintiff's rights and the devaluation of Plaintiff's possessions based on race

21   further substantiate the claim mistreatment and intent to violate constitutional rights.

22   45.  Therefore, Plaintiff seeks appropriate relief, including but not limited to compensatory damages for the loss of

23   property, punitive damages for the intentional violations of constitutional rights, and any other relief deemed

24   just and proper by the court.

25   46.  Plaintiff was harmed as a direct result of Defendants' breach of duty.

26   47.  It is highly irregular for a self-storage company to remove a customer's lock without informing them, especially

27   when the customer is in good financial standing.

28   48.  In my case, the company failed to reimburse me for the cost of the lock, and they also did not disclose how

KEREN VS ACCES - 5

1  long my storage unit was left unsecured.

2  49. Despite knowing that I was scheduled to visit that day, the manager Defendant AF still did not notify me about

3  the situation. He physically escorted me to my storage unit and when he saw me struggling to figure out why

4  my key wasn't working for a good six minutes that when he notified that it was a completely new lock.

5  50. That when I knew this white man was weirdo and up to something.

6  51. I had previously communicated frequently with Defendant AF on the phone, so there was no reason for the lack

7  of communication, and they had all my contact information available to them.

8  52. The manager's decision to cut the lock without my knowledge or consent raises numerous concerns.

9  53. This incident was driven by ulterior motives.

10  54. It appears as though the manager targeted me based on my appearance, presuming that I might have valuable

11  items in my storage unit just because I am pretty.

12  55. One of the assumptions that pretty girls get is that people assume pretty girls are super wealthy because people

13  think that if you're pretty you must have money and I believe that's why they cut off my lock to see the items I

14  had because they wanted to evaluate my items so they could sell them.

15  56. This situation has left me questioning the integrity and security measures of the self-storage company.

16  57. Again, I strongly suspect that the reason for this behavior was malicious. It seemed as though the manager

17  deliberately targeted me, seemingly assuming that I, as a woman, appeared affluent due to my beauty. This

18  assumption may have driven him to inspect my belongings, presuming that I might possess valuable items

19  which he could potentially sell which is what caused him to violate my constitutional rights.

20  58. I seek appropriate relief, including compensatory damages for the loss of property, punitive damages for the

21  intentional violations of my constitutional rights, and any other relief deemed just and proper by the court.

22  59. WHEREFORE, Plaintiffs demand judgment for this first cause of action against defendants in the amount of

23  eighty thousand dollars ($80,000.00), exclusive of interests, court fees, any potential attorney consulting fees

24  and costs.

25  **SECOND CAUSE OF ACTION**

26  **BREACH OF CONTRACT AND FALSIFICATION OF CONTRACT**

27  60. I, as the Plaintiff, hereby incorporate and reallege Paragraphs 1 through 59, as though fully set forth at length

28  herein.

KEREN VS ACCES - 6

61. Defendant breached the contract by falsifying it and substituting Plaintiff's digital signature onto a contract that Plaintiff did not initially sign.

62. Defendant knowingly misrepresented the terms of the contract, which were altered after the initial agreement. Plaintiff, has a degree in law and I have specialized knowledge in contracts, would not have signed the fabricated contract presented by the Defendant AF.

63. Defendant AF actions amount to a breach of contract by engaging in deceitful practices that undermine the integrity and legitimacy of the agreement.

64. Plaintiff claims that Defendant's actions constitute the falsification of a contract which initially breaches my contract.

65. By surreptitiously modifying the terms of the agreement and forging Plaintiff's digital signature, Defendant engaged in fraudulent behavior with an intent to deceive.

66. Plaintiff's legal expertise, and education and awareness of contract details highlight the deliberate nature of the deceit perpetrated by Defendant.

67. The falsification of the contract led to misrepresentation and a lack of transparency in the contractual relationship, thereby causing harm to Plaintiff rights and interests.

68. Defendant's actions warrant legal recourse to hold them accountable for their fraudulent behavior and uphold the principles of contract authenticity and honesty.

69. Defendant Access Self Storage Of Williston and definitely Armand Fournier's conduct were malicious, wanton, willful, oppressive, and/or exhibited a reckless indifference to my property rights.

70. Having a background in law and expertise in contracts, it was evident to me that the new contract proffered to me for signature was materially different from the original agreement.

71. Defendant AF, with knowledge of my legal acumen, illicitly copied and pasted my digital signature onto this fake contract, falsely claiming it was a document I had agreed to.

72. The false contract offered terms that no reasonable person, let alone one educated in law, would sign.

73. This was a clear breach of contract, as the Defendant AF engaged in deceitful behavior without my consent nor verification.

74. I suffered damages, including but not limited to the loss of valuable items and emotional distress, due to Defendant's actions.

KEREN VS ACCES - 7

75. Defendant Armand Fournier not only breached our contract but also committed the tort of falsification by unilaterally altering the terms of the agreement and forging my digital signature.

76. By introducing a fraudulent contract document without my knowledge or consent, Defendant engaged in malicious deceit. This falsified contract not only misrepresented my intentions but also subverted the principles of our initial contractual agreements.

77. Through these actions, Defendant attempted to deceive me, a person of legal sophistication, which clearly indicates an intent to defraud. As a result, I suffered damages, including the loss of trust, emotional distress, and the devaluation of my possessions.

78. Defendant's behavior was racially motivated, as evidenced by disparate treatment and actions inconsistent with industry norms, demonstrating a clear case of malicious intent and deception for which I seek retribution in pursuit of justice in this court of law.

79. As a result of all Defendants intent to deceit and defraud me by breaching our contract and providing me a falsified contract plaintiff was harm.

80. WHEREFORE, Plaintiffs demand judgment for this second cause of action against defendants in the amount of eighty thousand dollars ($80,000.00), exclusive of interests, court fees, any potential consulting attorney fees and costs.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81. Plaintiff hereby incorporates and realleges Paragraphs 1 through 80 as though fully set forth at length herein.

82. The intentional and discriminatory conduct of the Defendant, which involved cutting the lock on my storage unit and disposing of my belongings without proper notice or appraisal, has subjected me to what amounts to intentional infliction of emotional distress.

83. Defendant had a duty to engage in behavior that would not cause Plaintiff intentional emotional distress, including ensuring the security and maintenance of Plaintiff's storage unit and possessions.

84. Defendant's conduct in cutting Plaintiff's lock without notification, denying access to security camera footage, imposing excessive late fees, threatening to sell Plaintiff's items, and ultimately discarding Plaintiff's belongings, all in a manner influenced by racial discrimination, amounted to intentional infliction of emotional distress.

KEREN VS ACCES - 8

85. As a result of Defendant's intentional conduct, Plaintiff has suffered significant emotional harm, distress, and anguish, including the devaluation and loss of cherished possessions, leading to irreparable emotional harm and distress.

86. Defendant's conduct in the intentional cutting of Plaintiff lock and the subsequent disposal of my possessions without proper notice or appraisal, and in a manner that exhibited racial discrimination, is tantamount to intentional infliction of emotional distress.

87. Such behavior on the part of Defendant qualifies as extreme and outrageous, given the deliberate interference with Plaintiff property rights and the evident discriminatory treatment that Plaintiff, being a Black woman, I was subjected to.

88. This deliberate and malicious mistreatment inflicted severe emotional distress upon Plaintiff, causing significant mental anguish and harm.

89. The intentional and unjustified actions by Defendant were carried out with the specific intent to harm Plaintiff emotional well-being, disregarding my right and devaluing my possessions based on racial bias.

90. Consequently, Plaintiff's emotional well-being and sense of security have been severely impacted by Defendant's wrongful acts, giving rise to a clear and actionable claim of intentional infliction of emotional distress against Defendant.

91. Plaintiff has suffered emotional harm, distress, and mental anguish.

92. Defendant's actions were willful, malicious, and done with the intent to cause harm to Plaintiff's emotional well-being, thus giving rise to the claim of intentional infliction of emotional distress.

93. WHEREFORE, Plaintiffs demand judgment for this third cause of action against defendants in the amount of fifty thousand dollars ($50,000.00), exclusive of interests, court fees, any potential attorney consulting fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

94. For the first cause of action for violation of article one of the Vermont constitution - subjection concerning constitutional right of possessing and protecting property based upon the doctrine of respondeat superior, in the amount of eighty thousand dollars ($80,000.00);

KEREN VS ACCES - 9

95.  For the second cause of action for breach of contract and falsification of contract, in the amount of eighty thousand dollars ($80,000.00);

96.  95.  For the third cause of action for intentional infliction of emotional distress, in the amount of fifty thousand dollars ($50,000.00),

Dated this Ninth day of April 2024.

April 11, 2024

KEREN SITA

KEREN VS ACCES - 10